DOLORES PÉREZ DE PORTELA ET AL., Plaintiffs and Appellees, *v.* FRANCISCO J. MARRERO, Defendant and Appellant.

No. 6375. Argued May 3, 1934.—Decided September 29, 1934.

R. *Rivera Zayas* and *José E. Díaz* for appellant. *V. M. Fernández* for appellees.

Mr. Justice Hutchison delivered the opinion of the Court.

Francisco J. Marrero foreclosed a mortgage on a one-story tile roofed house described as extending from one street to another in Vega Baja. When the marshal went to execute a writ of possession he found a frame *mirador,* roofed with zinc, which had been built in the court yard or above the court yard of the house described in the writ and within the boundaries of the mortgaged property. This *mirador* was occupied by a tenant through whom plaintiffs exercised actual possession and control thereof. They refused to vacate the *mirador* and the marshal left them in the actual possession thereof, but put the mortgagee in possession of the rest of the premises. Later the mortgagee obtained actual possession of the *mirador* and plaintiffs instituted the present summary proceeding to restore the status quo. The facts, as found by the District Judge, and the law applicable thereto are clearly set forth in a statement of the case and opinion as follows:

"This is an injunction to recover possession. The plaintiffs allege that within the year preceding the filing of the complaint they were in actual possession of a piece of property made up by a lot and house, which they describe, situated in Vega Baja, and that the defendant had dispossessed them thereof, setting up the facts constituting the disposession. The defendant in his answer denies

the averments and pleads that he is in possession thereof by right of purchase at a public auction.

"The issue was thus joined and the case went to trial on February 21, 1933. The parties appeared by counsel and witnesses were examined.

"The plaintiffs' evidence consisted of the following testimony:

"*a.* Consuelo Portela testified that she was one of the plaintiffs and, after describing the property, stated that they had been in possession of the property from 1925 until the end of November, 1932; that in October, 1932, the marshal of this court went to put the defendant in possession of some property under execution belonging to Dolores Pérez de Portela and upon the defendant pointing out to the marshal, among others, the immovable in litigation, she called the latter's attention to the fact that the said immovable was not included among the property to be executed, as it belonged to the heirs of Portela and not to Mrs. Dolores Pérez de Portela, and consequently the marshal refused to deliver the same; that the house in question was occupied by Alejandro Torres as tenant of the heirs of Portela, who had brought an action of unlawful detainer against him and that on the eve of his eviction the defendant arrived, bringing in his own car some furniture belonging to Enrique Pumarejo and gave him possession of the said house as tenant; that the plaintiff called Pumarejo's attention and he replied that if he was there in possession of the house he was acting on orders from the defendant; that a few days afterwards the defendant had the house painted, a rail fence destroyed and other repairs made; and that all the above was done against the will and notwithstanding the opposition of the plaintiffs.

"*b.* José Santiago testified that he is deputy marshal of this court and that in order to put the defendant in possession of certain property bought at an execution sale in an action prosecuted against Dolores Pérez de Portela, he went to Vega Baja and that when he was on the point of putting the defendant in possession of a building, Miss Consuelo Portela objected and stated, in the presence of defendant Marrero, that certain part of the house was not included in the property to be delivered; that a sort of pent-house (mirador) has been built over part of the house; that the witness informed the parties that his sole and exclusive mission was to deliver possession of the property described in the writ; tha tthe writ did not cover the upper part (meaning the so-called pent-house); and that in pursuance thereof he put the defendant in possession of a one-story brick

building with flat roof in Ramón Betances street of Vega Baja, bounded on its right, facing it, by the house of Pedro Lluberas, and on the left by Chorro street; that the house is divided into several rooms and one of them looks on Palma street; that that was the part of which he gave possession to defendant Marrero.

"c. Dr. C. M. García, Liberio A. Matos and José M. Portela substantially corroborated with their testimony that of the witness, Consuelo Portela.

"The witnesses for the defendant were José J. Rodríguez, Emilio Martínez and the defendant himself, whose testimony substantially tended to show that the defendant had possession of the entire building situated in Betances Street, Vega Baja, by virtue of the actual delivery thereof made to him by the marshal of this court in October, 1932, when he put the defendant in possession of the property bought at public auction in the execution proceedings against Mrs. Pérez de Portela; and that on the roof of the building already described there is a pent-house (mirador), and that the said officer also delivered to him the possession of that part of the building because the whole of it constituted a single piece of property.

"As may be seen, the evidence is conflicting. However, the testimony of the marshal is explicit. During his examination he stated several times as a fact that he had not delivered to the defendant the possession of the structure or building under litigation. The following is from his testimony:

" 'Q. Was that property not included?

" 'A. The writ did not cover the front part.

" 'Q. Did you not put him in possession of that property?

" 'A. No. I only put him in possession of the property described in the writ.

" ' . . . . . . . . . . .

" 'Q. It is then clear that the witness did not put Francisco J. Marrero in possession of that part—which the witness calls a penthouse of the two-story house?

" 'A. No. I only informed him that I was giving him possession of the property that I have just described here, that is, in strict compliance with the writ.

" ' . . . . . . . . . .

" 'The Court. Will the witness state whether the house extends over the whole lot.

" 'A. It does not. In the middle of the street . . . . . By the court's leave . . . . . (he goes to the blackboard). In the

middle of Chorro street, in this part of Chorro street, which is this street across here, upon reaching this spot, there is a gate opening into a small yard measuring two meters approximately, dividing the wall, that is, starting from the wall extending from one street to the other. It leads into a small yard. The entrance measures about two meters and starting from there, three is an uninterrupted concrete wall reaching out to the other street. It is divided by a gate.

" 'Q. Is there anything on the yard?

" 'A. There is nothing on the surface of the yard.

" 'Nothing?

" 'A. Absolutely nothing.

" 'Q. And above the yard?

" 'A. Above the yard, that is, on the wall which, after an opening for the entrance, extends upwards, is the left.

" 'Q. So, there is no ground floor?

" 'A. No, there is nothing at the entrance, absolutely nothing. That is a small yard of . . . . .

" 'Q. And did you put the defendant in possession of what you found there?

" 'A. Saying that it answered the description of the property referred to in the writ.

" 'Q. The witness is not answering my question. I ask whether the witness put the defendant in possession of that sort of left without a ground floor?

" 'A. Not at all. I put him only in possession of the house as described in the writ where no mention is made of that upper part.'

"Whether the plaintiffs were in possession of the immovable in controversy, or whether the marshal, as shown by his testimony, did not put the defendant in possession thereof, there is no doubt that the latter took forcible possession of the immovable against the will of the plaintiffs, since the other facts or acts constituting the dispossession as described in the fifth averment of the complaint and which appear from the plaintiffs' evidence, were not controverted or refuted.

"The defendant has tried to discuss the title to the possession, asserting that the marshal gave him possession of the immovable, and to discuss the ownership of the thing by asserting that the same is an integral part of a certain immovable that he acquired at a public auction. But the issue in this sort of interdicts or injunctions is not the title and its legal consequences: it is a question of fact and as such must be considered in the present proceeding. Our

436

statutes grant the remedy to a person who has been disturbed in the possession or occupancy and for the purpose of recovering actual possession, but not the title or right thereto.

"In *Fajardo* v. *Pasto Viejo*, 41 P.R.R. 817, it is stated:

" 'What is sought and secured by such summary proceedings, where the title is neither discussed nor determined, is what the text-writers call security of possession. Every possessor is entitled to be protected in his possession; such is the legal concept contained in Section 448 of the Civil Code of Porto Rico. A possessor is a presumptive owner; and there is in the possession a state of fact to be respected by all and to be upheld by the law.

" '. . . . . In injunctions to retain and recover the possession the issue is merely a question of fact and not of law, and its scope is well restricted.'

"In *Vicente* v. *Ortiz*, 38 P.R.R. 95, it is stated that in injunction proceedings to recover possession the only question is whether the plaintiff had the actual possession or occupancy of the property of which he had been dispossessed during the year next preceding the filing of the complaint, or whether, having the possession, he was disturbed in such possession.

"In *Pérez* v. *Pérez*, 38 P.R.R. 676, it was held that in injunctions known as interdicts the question is whether the plaintiff was in possession on a given date within the statutory year and whether he was deprived of such possession.

"In *Vázquez* v. *Rivera*, 37 P.R.R. 748, it was established that in injunction proceedings to recover possession the question to be shown and determined is the possession of the plaintiff and not his ownership title.

"In *Oliver* v. *González*, 37 P.R.R. 868, 874, it was held that:

" '. . . . . in a case of injunction to retain possession, for in this summary proceeding the only question to be considered is the possession, regardless of the ownership and even of the possessory title'.

"Among some other cases to be repeatedly found in the decisions of the Supreme Court there is that of *Solís* v. *Castro*, 36 P.R.R. 94, in which it was stated that in injunction proceedings to recover the possession of real property the only issue for determination is a question of fact and not of law.

"In 4 Manresa, 209, 210, the illustrious text-writer expresses himself as follows:

" 'Injunction, following the definition given to it by writers on procedure, is a summary proceeding the purpose of which is to determine temporarily on the fact of possession without prejudice to the rights of the parties, or to suspend or prevent a prejudicial act. The name is also given to remedies granted to a possessor to attain the same end.

" 'By its very nature, decisions on injunction are not final and do not prejudice third parties with equal or better rights. They are no bar to broader actions where questions of right can be pleaded, considered, argued and decided. It could not be otherwise, since, as regards the matter which concerns us, possession may have in its favor a presumption of the right to possession, but such presumption yields necessarily to contrary proof, and that proof, referring to the right and not to the fact, can not be admitted in an injunction.'

"Scaevola, another illustrious commentator, expresses himself as follows in vol 8, pp. 373, 375, of his commentaries on the Civil Code:

" 'In an injunction proceeding it is a question of fact and not of law which can be argued; and this is the gist of the decisions of the Supreme Court referred to. If it were allowed to argue in respect to the title to the possession, in regard to the right of the possessor to the property, the nature of the remedy of injunction would be changed and either the injunction or the ordinary action would be unnecessary in order to amply argue possession or ownership, and they would be condensed into one remedy.'

"The following is from *Figueroa* v. *Lugo,* 43 P.R.R. 831.

" 'The matter at issue was not the ownership title but the actual possession of the land during one year. *A* may be fully entitled to the ownership and consequently to the possession of an estate and yet if the estate had been occupied during one year next preceding the filing of the complaint by *B*, *A* would be barred from instituting as against *B* injunction proceedings to recover the possession. He must resort to other remedies provided by law for the purpose of enforcing his right.

" 'This has been decided by this court in several cases.'

"The question concerning the possessory title is not, therefore, a proper subject of these proceedings but of plenary actions for the recovery of property.

"The point as to whether the marshal put the defendant in possession of the immovable involved in the present proceedings was adversely decided on the plaintiff's evidence. Whether or not that immovable is part of the property which the marshal delivered to

the defendant is something that can not be determined in the present proceeding.

"The following is from the case of *Rivera* v. *Vargas,* 43 P.R.R. 144.

" 'If the portion in controversy is really part of the property which has been conveyed, the plaintiff may enforce his right before the courts in the proper action but not in an injunction whose nature has been perfectly established by the law and the decisions. The evidence as to whether the plaintiff had actual possession of the portion claimed by him and that the defendant forcibly entered upon the same and occupied it against the will of the plaintiff was conflicting and the conflict was decided against the plaintiff.

" 'We have not lost sight of the provisions of paragraph 2 of Section 1365 of the Civil Code, to wit, that when the sale is made by means of a public instrument, as in the present case, the execution thereof shall be equivalent to the delivery of the thing sold. If the occupied portion is really part of the estate, the purchase and the above Section fully entitle the plaintiff to claim it.

" 'But the claim, we repeat, cannot be enforced within injunction proceedings whose scope is the recovery or retention of the actual possession of real property, it being necessary to allege and show in accordance with the law: (1) that the plaintiff, within the year next preceding the filing of the complaint, had had actual possession of the property described in said complaint, if recovery thereof is sought, and had and still has it if its retention is involved.'

"Besides, one of the plaintiffs, Miss Portela, testified that the house in controversy stands on a lot belonging to the municipality, and it was so alleged in the complaint. This lot, which the defendant's witnesses call yard, is an open space in the lot and building whose possession was delivered to the defendant and has its frontage on Hostos street. Is it, as claimed, the yard of the house acquired by the defendant, or is it a lot belonging to the municipality of which the plaintiffs have possession, entitled to such possession and to the exercise of ownership rights? Such issue can not be determined in proceedings like the present. But it has been held, however, as in *Puig* v. *Lorden,* 43 P.R.R. 840, that any person who has had actual possession and has committed acts of ownership over a strip of land under color of some right to such possession and ownership, may, upon holding being disturbed in such possession, institute proceedings to recover that of which he has been dispossessed.

"At the end of the hearing in the present case the defendant applied to the court for an ocular inspection alleging that the judge, upon getting there, 'will see that there is no such house as described in the complaint.' That inspection was made on March 18, 1933, and the following appears from the minutes thereof:

" 'The immovable in controversy is situated in Eugenio María de Hostos street, Vega Baja. It is a two-story structure. The ground floor consists of a single body built of bricks with a frame annex or wing for a kitchen and used as dining room and parlor, and a wooden staircase leading to the upper floor. This upper floor is all of wood, roofed with galvanized iron and divided into three bedrooms, with a small balcony in front looking on Hostos street.'

"The complaint must be sustained, with costs to defendant. *Figueroa* v. *Lugo*, 43 P.R.R. 831; *Hernández* v. *Sánchez*, 41 P.R.R. 72; *Solís* v. *Castro*, 36 P.R.R. 285; *Ortiz* v. *Silva*, 28 P.R.R. 357; *People* v. *Oms*, 35 P.R.R. 691."

The first contention of appellant is that the district court erred in weighing the evidence. The gist of the argument is that defendant was in lawful possession of the *mirador* because it formed a part of the mortgaged property and as such had been awarded to him in the foreclosure sale. The answer to this, as pointed out by the District Judge, is that the pivotal point was the fact of actual physical possession by plaintiffs at the time of actual ouster and that the question of defendant's right to possession or constructive possession as a result of the foreclosure sale was a matter of little or no importance. The marshal did not put the mortgagee in actual physical possession of the *mirador* and the District Judge did not err in his weighing of the evidence as to this controlling feature.

A reversal of the judgment on the ground that the District Judge erred in weighing the evidence would require us to hold that after a foreclosure sale the delivery of a part of the mortgaged premises without actual delivery of the whole is a physical impossibility. We are not prepared to go quite so far as that.

Thus far, taking the view most favorable to appellant, we have assumed that the structure in question was a

"mirador" only. From the District Judge's view of the premises, the result of which is set forth in his opinion, supra, it clearly appears, however, that the structure itself was not a *mirador* but a two-story affair in the nature of a new building "where none formerly existed", not the "heightening" of a building, within the meaning of Article III of the Mortgage Law. Certainly, there can be no serious question about the feasibility of leaving the actual occupant of such structure in the actual physical possession thereof, notwithstanding the delivery of the mortgaged premises to a purchaser at a foreclosure sale.

 The second assignment goes to the exclusion of certain evidence as indicated by the following extracts taken by appellant from different parts of the stenographic record:

".—Tell me . . . . . Have you known of a two-story house belonging to the Portela heirs?

"The Court.—Objection sustained.

"The court.—Objection sustained.

"Mr. Díaz.—Your Honor, we maintain in our answer that Francisco J. Marrero is the owner of a house and that there is within that house that of. . . . . .

"The Court.—In proceedings like the present n oadmission can be made of any kind of proof tending to show the title, or the title to the possession of any thing. . . . . .

"Mr. Díaz.—Do you know whether Mr. Francisco J. Marrero is in possession of any piece of property belonging to Miss Consuelo Portela or to her brothers?

"Mr. Fernández.—I object.

"The Court.—Objection sustained.

"Mr. Díaz.—Then, we can not submit any kind of evidence. . . . .

"The Court.—Of course, you can . . . . Counsel may ask the following question: 'Do you know whether Francisco J. Marrero is in possession of any immovable situated in Betances street, Vega Baja?"

" . . . . . . . . .

"Q.—Of José Julián Acosta? So that, let the witness answer, . . . . . . Is that an independent structure or is that structure part of the house you have described?

"Mr. Fernández.—I move that the question be stricken out.
"The Court.—Motion granted."

What we have already said practically disposes of the question here sought to be raised. In any event, no exception was taken and the error, if any, was harmless.

We find no abuse of discretion in the award of costs.

The judgment appealed from must be affirmed.

Mr. Justice Wolf and Mr. Justice Aldrey dissented.

CONCURRENT OPINION OF MR. JUSTICE CORDOVA DAVILA

In the instant case the plaintiffs alleged that the Municipality of Vega Baja had granted them the use of a lot located in Eugenio María de Hostos Street, measuring 45½ feet wide by 14 feet in depth and bounded on the North, South and West by properties of the Heirs of Ramón B. Portela, and on the East by the street where it is located. It is alleged that the plaintiffs have in said lot a building described as follows:

"URBAN: A two-story building, the ground floor of bricks and the upper floor of native wood, roofed with galvanized iron, with a small balcony in the upper floor and with a frame annex or wing in the lower one measuring 8.21 meters wide by 4.51 meters in depth. It is bounded on the right, left and back by properties of the heirs of Portela, and on its front by the Eugenio María de Hostos Street, where it is located."

According to the plaintiffs, when the defendant was being put in possession of some property under execution belonging to Dolores Pérez de Portela he pointed out to the marshal the above described property as included among the property to be executed, and took possession of the same fraudulently, against the will of the plaintiffs who now pray to be restored in the possession of the said property. The defendant in his answer alleges that in execution of a judgment entered in a case prosecuted against Dolores Pérez de Portela to foreclose a mortgage he obtained at public auction a property which is described as follows:

"Urban: A concrete flat roofed house located in the town of Vega Baja, El Rosario Street; today Ramón E. Betances Street measuring 13 *varas* wide by 40 *varas* in depth, divided into several rooms, one of them looking on Palma Street. It is bounded on the south with Ramón E. Betances Street; on the right, facing it, by the house of Pedro Lluberas, on the left by Chorro Street, today Eugenio María de Hostos, and on the north by Palma Street."

The defendant denies the fundamental averments in the complaint and prays for its dismissal.

In the record there is no documentary evidence describing the property mortgaged and sold in execution of the judgment to the mortgagee Francisco J. Marrero. When the marshal was examined as to the measures of the house that he put in possession of the defendant he said that said house is 11 meters wide by 17 meters in depth. Said measurements do not conform with those of the house 13 *varas* wide by 40 *varas* in depth described by the defendant himself in the answer.

It is true that the marshal states that there is an upper floor over a part of the house, a sort of pent-house (*mirador*) and that when he was on the point of putting Mr. Marrero in possession of the immovable he had acquired, Consuelo Portela, one of the defendants objected and stated that said part of the house was not included in the property to be delivered; but said proof does not suffice to show that it was a heightening of the mortgaged building, especially if the evidence offered is examined as a whole.

Miss Portela declares that in 1923 that lot was unbuilt. She said "We built that house in 1925." The plaintiffs offered documentary evidence to show that the Municipal Assembly of Vega Baja had granted to the heirs of Ramón B. Portela the usufruct of a lot belonging to the municipality, the same which is described in the complaint. A deed executed before a notary on March 7, 1932, was also offered in evidence to show the construction of the house described in the complaint. The defendant objected to the admission of such

evidence on the grounds that in summary proceedings to recover the possession only evidence to show possession of the property during the year next preceding the filing of the complaint is admissible. The court refused to admit the documents offered.

The evidence introduced is misleading and insufficient. We do not know whether it is the heightening of a building or a new building where none formerly existed, or if the construction was made after or before the mortgage, because the record does not show the date of the mortgage loan. We do not know either the measures of the mortgaged lot and we are not prepared to affirm that the immovable claimed is within the boundaries of the said lot.

The lower court ends its opinion as follows:

"At the end of the hearing in the present case the defendant applied to the court for an ocular inspection alleging that the judge, upon getting there, 'will see that there is no such house as described in the complaint.' That inspection was made on March 18, 1933, and the following appears from the minutes thereof:

" 'The immovable in controversy is situated in Eugenio María de Hostos street, Vega Baja. It is a two-story structure. The ground floor consists of a single body built of bricks with a frame annex or wing for a kitchen and used as dining room and parlor, and a wooden staircase leading to the upper floor. This upper floor is all of wood, roofed with galvanized iron and divided into three bedrooms, with a small balcony in front looking on Hostos street.'

"The complaint must be sustained, with costs to defendant. *Figueroa* v. *Lugo,* 43 P.R.R. 831; *Hernández* v. *Sánchez,* 41 P.R.R. 72; *Solís* v. *Castro,* 36 P.R.R. 285; *Ortiz* v. *Silva,* 28 P.R.R. 357; *People* v. *Oms,* 35 P.R.R. 691."

The property described in the minutes of the ocular inspection is the same one which is claimed by the plaintiffs and which is described in the complaint. The court says nothing in relation with the property mortgaged and sold to the defendant. It does not state that the property claimed is included in the immovable acquired at public auction by Francisco J. Marrero.

As the possession of the immovable claimed has been shown by the plaintiffs and as the marshal testified that he acted in strict compliance with the writ and that he did not put the defendant in possession of a certain property claimed by Miss Portela as belonging to said plaintiff, the defendant was bound to show that the two-story house in question was included in the mortgaged property, and that he obtained judicial possession of the ground floor, and therefore, of the whole building. If we do not know the property mortgaged, if we ignore its boundaries and measures, hardly can we affirm that the property in question is a heightening of the mortgaged property or a new building where none formerly existed. According to Section 111 of the Mortgage Law the improvements consisting of adornment or heightening of buildings shall be considered to have been mortgaged jointly with the estate, even though not mentioned in the contract, provided they belong to the owner thereof. The same Section provides in its second paragraph that the improvements consisting of the construction of new buildings where none formerly existed shall not be considered as mortgaged jointly with the estate.

The lower court in the paragraph preceding the statement as to the ocular inspection, says:

"Besides, one of the plaintiffs, Miss Portela, testified that the house in controversy stands on a lot belonging to the municipality, and it was so alleged in the complaint. This lot, which the defendant's witnesses call yard, is an open space in the lot and building whose possession was delivered to the defendant and has its frontage on Hostos street. Is it, as claimed, the yard of the house acquired by the defendant, or is it a lot belonging to the municipality of which the plaintiffs have possession, entitled to such possession and to the exercise of ownership rights? Such issue can not be determined in proceedings like the present. But it has been held, however, as in *Puig* v. *Lorden,* 43 P.R.R. 840, that any person who has had actual possession and has committed acts of ownership over a strip of land under color of some right to such possession and ownership, may, upon being disturbed in such possession, institute proceedings to recover that of which he has been dispossessed."

In our opinion it is evident that the defendant has failed to show clearly that he took lawful possession of a property included in the mortgaged property and described in the writ. On the other hand the plaintiffs have shown that they were in possession of the property claimed and that the defendant dispossessed them thereof. The purchaser at public auction of a mortgaged property when taking possession thereof, must not go beyond the limits of the acquired property or of the property really mortgaged. If he takes possession of something not covered by the mortgage he is bound to return it upon the claim of its owner. As said before, the evidence in this case is not very clear. The defendant has failed to show that the property claimed by the plaintiffs is covered by the mortgage, and in that circumstance we think that the *status quo* must be restored, without prejudice to the rights that Francisco J. Marrero might have to obtain legal possession of the property through proper means. The above reasons lead us to concur with the opinion of the Court affirming the judgment appealed from.